FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 13, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MICHAEL T.,[1]

                Plaintiff,

      v.

ANDREW M. SAUL, the Commissioner
of Social Security,[2]

                Defendant.

No.    4:19-CV-5103-EFS

**ORDER GRANTING PLAINTIFF'S SUMMARY-JUDGMENT MOTION AND DENYING DEFENDANT'S SUMMARY-JUDGMENT MOTION**

       Before the Court are the parties' cross summary-judgment motions.[3] Plaintiff Michael T. appeals the denial of benefits by the Administrative Law Judge (ALJ). He alleges the ALJ erred by 1) improperly weighing the medical opinions; 2)

---

[1] To protect the privacy of the social-security Plaintiff, the Court refers to him by first name and last initial or by "Plaintiff." *See* LCivR 5.2(c).

[2] Because Andrew Saul is the Commissioner of the Social Security Administration, the Court substitutes him as the Defendant. *See* Fed. R. Civ. P. 25(d).

[3] ECF Nos. 13 & 14.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

discounting Plaintiff's symptom reports; 2) improperly determining that Plaintiff did not have a severe mental impairment; 3) improperly determining that the impairments did not meet or equal a listed impairment; and 4) failing to conduct an analysis at steps four and five. In contrast, Defendant Commissioner of Social Security asks the Court to affirm the ALJ's decision finding Plaintiff not disabled. After reviewing the record and relevant authority, the Court grants Plaintiff's Motion for Summary Judgment, ECF No. 13, and denies the Commissioner's Motion for Summary Judgment, ECF No. 14.

## I.    Five-Step Disability Determination

A five-step sequential evaluation process is used to determine whether an adult claimant is disabled.[4] Step one assesses whether the claimant is currently engaged in substantial gainful activity.[5] If the claimant is engaged in substantial gainful activity, benefits are denied.[6] If not, the disability-evaluation proceeds to step two.[7]

Step two assesses whether the claimant has a medically severe impairment, or combination of impairments, which significantly limits the claimant's physical

---

[4] 20 C.F.R. §416.920(a).

[5] *Id.* §416.920(a)(4)(i).

[6] *Id.* §416.920(b).

[7] *Id.* §416.920(b).

or mental ability to do basic work activities.[8] If the claimant does not, benefits are denied.[9] If the claimant does, the disability-evaluation proceeds to step three.[10]

Step three compares the claimant's impairment(s) to several recognized by the Commissioner to be so severe as to preclude substantial gainful activity.[11] If an impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[12] If an impairment does not, the disability-evaluation proceeds to step four.

Step four assesses whether an impairment prevents the claimant from performing work he performed in the past by determining the claimant's residual functional capacity (RFC).[13] If the claimant is able to perform prior work, benefits are denied.[14] If the claimant cannot perform prior work, the disability-evaluation proceeds to step five.

Step five, assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national economy—in

---

[8] 20 C.F.R. § 416.920(a)(4)(ii).

[9] *Id.* § 416.920(c).

[10] *Id.*

[11] *Id.* § 416.920(a)(4)(iii).

[12] *Id.* § 416.920(d).

[13] *Id.* § 416.920(a)(4)(iv).

[14] *Id.*.

light of the claimant's RFC, age, education, and work experience.[15] If so, benefits are denied. If not, benefits are granted.[16]

The claimant has the initial burden of establishing entitlement to disability benefits under steps one through four.[17] At step five, the burden shifts to the Commissioner to show that the claimant is not entitled to benefits.[18]

If there is medical evidence of drug or alcohol addiction (DAA), the ALJ must then determine whether DAA is a material factor contributing to the disability.[19] To determine whether DAA is a material factor contributing to the disability, the ALJ evaluates which of the current physical and mental limitations would remain if the claimant stopped using drugs or alcohol and then determines whether any or all of the remaining limitations would be disabling.[20] Social Security claimants may not receive benefits if the remaining limitations without DAA would *not* be

---

[15] 20 C.F.R. § 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

[16] 20 C.F.R. § 416.920(g).

[17] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[18] *Id.*

[19] 20 C.F.R. § 416.935(a).

[20] 20 C.F.R. § 416.935(b)(2).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 4

disabling.[21] The claimant has the burden of showing that DAA is not a material contributing factor to disability.[22]

## II.    Factual and Procedural Summary

Plaintiff filed an XVI application, alleging a disability onset date of November 22, 2014.[23] His claim was denied initially and upon reconsideration.[24] A video administrative hearing was held before Administrative Law Judge R.J. Payne.[25]

In denying Plaintiff's disability claim, the ALJ made the following findings:

- Step one: Plaintiff had not engaged in substantial gainful activity since March 23, 2015, the application date;

- Step two: Plaintiff had the following medically determinable severe impairments: depressive disorder, anxiety disorder, personality disorder, and substance abuse/addiction (methamphetamine, cocaine, cannabis). Depressive disorder, anxiety disorder, and personality

---

[21] 42 U.S.C. § 423(d)(2)(C); 20 C.F.R. §, 416.935(b); *Sousa v. Callahan*, 143 F.3d 1240, 1245 (9th Cir. 1998).

[22] *Parra*, 481 F.3d at 748.

[23] AR 256, 260, & 264.

[24] AR 91 & 100.

[25] AR 35.

disorder impairments were considered non-severe without the consideration of DAA.

- Step three: Plaintiff's impairments, with consideration of DAA, met Listings 12.04, 12.06, and 12.08, in combination. However, if Plaintiff stopped the substance use, the remaining limitations would not cause more than a minimal impact on Plaintiff's ability to perform basic work activities; therefore, Plaintiff would not have a severe impairment or combination of impairments.[26]

When assessing the medical-opinion evidence, the ALJ gave:

- great weight to the opinion of testifying psychologist medical expert Jay Toews, Ph.D.;

- Some weight to the examining opinion of psychologist Ronald Page, Ph.D., when considering the severity of Plaintiff's mental impairments with substance abuse; and

- little weight to the opinions of state agency psychologists Bruce Eather, Ph.D. and Vincent Gollogly, Ph.D.; DSHS psychologist Holly Petaja, Ph.D.; and Dr. Page, when assessing the severity of Plaintiff's impairments without substance abuse.

The ALJ also found that if Plaintiff stopped the substance abuse, Plaintiff's medically determinable impairments could reasonably be expected to cause some of

---

[26] AR 18 & 21-24.

1

2    the alleged symptoms, but that his statements concerning the intensity,

3    persistence, and limiting effects of those symptoms were not entirely consistent

4    with the medical evidence and other evidence in the record.[27] Likewise, the ALJ

5    discounted Plaintiff's mother's lay statements.[28]

6        Plaintiff requested review of the ALJ's decision by the Appeals Council,

7    which denied review.[29] Plaintiff timely appealed to this Court.

8                    ### III.    Standard of Review

9        A district court's review of the Commissioner's final decision is limited.[30] The

10   Commissioner's decision is set aside "only if it is not supported by substantial

11   evidence or is based on legal error."[31] Substantial evidence is "more than a mere

12   scintilla but less than a preponderance; it is such relevant evidence as a reasonable

13   mind might accept as adequate to support a conclusion."[32] Moreover, because it is

14   the role of the ALJ and not the Court to weigh conflicting evidence, the Court

15

16

17   ─────────────────────

18   [27] AR 23.

19   [28] AR 22.

20   [29] AR 1.

21   [30] 42 U.S.C. § 405(g).

22   [31] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

23   [32] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 7

1

2

upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[33] The Court considers the entire record as a whole.[34]

3

4

5

6

Further, the Court may not reverse an ALJ decision due to a harmless error.[35] An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."[36] The party appealing the ALJ's decision generally bears the burden of establishing harm.[37]

7

### IV.    Analysis

8

**A.    Medical Opinions: Plaintiff establishes error.**

9

10

11

Plaintiff challenges the ALJ's assignment of little weight to the opinions of Ronald Page, Ph.D., Holly Petaja, Ph.D., Bruce Eather, Ph.D., and Vincent Gollogly, Ph.D. The Court agrees the ALJ erred in failing to meaningfully explain

12

13

14

[33] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

15

16

17

18

19

[34] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

20

[35] *Molina*, 674 F.3d at 1111.

21

[36] *Id.* at 1115 (quotation and citation omitted).

22

23

[37] *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

why he discounted these medical opinions in relation to Plaintiff's functioning without substance abuse.

The weighing of medical-source opinions is dependent upon the nature of the medical relationship, i.e., 1) a treating physician; 2) an examining physician who examines but did not treat the claimant; and 3) a non-examining physician who neither treated nor examined the claimant.[38] Generally, more weight is given to the opinion of a treating physician than to an examining physician's opinion and both treating and examining opinions are to be given more weight than the opinion of a non-treating physician.[39] When a treating physician's or evaluating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and when it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record.[40] A reviewing physician's opinion may be rejected for specific and legitimate reasons supported by substantial evidence, and the opinion of an "other" medical source may be rejected for specific and germane reasons supported by substantial

---

[38] *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

[39] *Id.*; *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

[40] *Lester*, 81 F.3d at 830.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 9

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

evidence.[41] The opinion of a nonexamining physician serves as substantial evidence if it is supported by other independent evidence in the record.[42]

　　1.　　Dr. Page

　　Dr. Page performed a psychological evaluation of Plaintiff on April 12, 2012, and March 6, 2015. Dr. Page diagnosed Plaintiff with methamphetamine use disorder (self-stated abstinence for 106 days), cannabis use disorder, nicotine use disorder, and antisocial personality disorder. Dr. Page opined that Plaintiff was moderately limited in understanding, remembering, and persisting in tasks by following detailed instructions; learning new tasks; completing a normal work day and work week without interruptions from psychologically based symptoms; maintaining appropriate behavior in a work setting; and setting realistic goals and planning independently. Dr. Page also opined Plaintiff had marked limitations in performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances without special supervision.[43] Dr. Page opined that Plaintiff's impairments were primarily the result of alcohol or drug use within the past sixty days and that the impairments would persist following sixty days of sobriety.[44]

---

[41] *Molina*, 674 F.3d at 1111; *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009).

[42] *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

[43] AR 373.

[44] *Id.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

The ALJ discounted Dr. Page's testimony assessing Plaintiff's functioning without substance abuse because Dr. Page "expressly noted that [Plaintiff's] current impairments were primarily the result of alcohol/drug use" and "[w]hile he also indicated that [Plaintiff's] impairments would persist following 60 days of sobriety, he did not provide an opinion as to how they would change."[45]

In conducting a DAA analysis, the "key factor" for the ALJ to consider is whether the claimant would still be disabled if the claimant stopped using drugs or alcohol.[46] Therefore, the fact that a medical report reflects a claimant's functioning while using drugs or alcohol is a valid consideration to make in evaluating a medical opinion.[47] Here, while Dr. Page noted Plaintiff's current impairments were primarily the result of alcohol or drug use within the past 60 days, Dr. Page reported that Plaintiff's current impairments would be the same impairments persisting following 60 days of sobriety, indicating Dr. Page's assessment of limitations would remain the same with or without the effects of Plaintiff's drug

---

[45] AR 21.

[46] 20 C.F.R. § 416.935(b)(2).

[47] *See Chavez v. Colvini*, No. 3:14-cv-01178-JE, 2016 WL 8731796, at *8 (D. Or. July 25, 2016).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

and alcohol abuse.[48] Thus, the ALJ's reason for rejecting Dr Page's opinion is not supported by the record and does not constitute a specific and legitimate reason for rejecting the report.

The Commissioner relies on *Andrews v. Shalala*, 53 F.3d 1035 (9th Cir. 1995), to argue that the ALJ's decision to discount Dr. Page's opinion was appropriate because "he opined that Plaintiff's limitations were 'primarily the result' of substance abuse and was contradicted by Dr. Toews testimony."[49] But the ALJ in *Andrews* heavily relied on the fact that the plaintiff lacked credibility based on comments made by the plaintiff. Here, the record supports Plaintiff being honest and up front with treatment providers about his drug use and history.[50] In addition, the issue here is not whether Dr. Toews' opinion contradicted Dr. Page's opinion or the credibility of Plaintiff, but rather if the ALJ erred in rejecting Dr. Page's opinion because Plaintiff's current impairments were primarily the result of alcohol/drug use and Dr. Page did not provide an opinion as to how Plaintiff's impairments would change. And as explained above, this is not a specific and legitimate reason for rejecting the opinion.

---

[48] AR 373 (When asked, "Would the current impairments persist following 60 days of sobriety?" Dr. Page answered "Yes" rather than answering "If Not, how would they change?").

[49] ECF No. 14 at 17.

[50] *See, e.g.,* AR 40-41, 45, 335, 410 & 422.

2.   <u>Dr. Petaja</u>

In March 2015, Dr. Petaja reviewed Dr. Page's March 2015 opinion and 2012 psychological evaluation and agreed with Dr. Page's diagnosis of antisocial personality disorder and polysubstance use disorder.[51] Dr. Petaja assessed a severity rating of four for Plaintiff's maladaptive personality traits, hypomanic, loose associations, social anxiety/intolerant of others, and lack of insight.[52] Dr. Petaja opined that Plaintiff had moderate limitations in understanding, remembering, and persisting in tasks by following detailed instructions and learning new tasks. Dr. Petaja also opined that Plaintiff had marked limitations in performing activities within a schedule, maintaining regular attendance and being punctual within customary tolerances; maintaining appropriate behavior in a work setting; completing a normal workday and workweek without interruptions from psychologically based symptoms; and setting realistic goals and planning independently.[53] Dr. Petaja opined that Plaintiff's mental impairments were due to alcohol or drug abuse/addiction and would persist at least 12 months after Plaintiff ceased using drugs or alcohol.[54]

---

[51] AR 409.

[52] *Id*.

[53] AR 408.

[54] AR 407 & 409.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

Like Dr. Page's opinion, the ALJ discounted Dr. Petaja's testimony assessing Plaintiff's functioning without substance abuse because she "provided no opinion as to the degree to which [Plaintiff's impairments] would affect functioning" after "60 days of sobriety."[55] As explained above, while Dr. Petaja noted Plaintiff's current impairments were primarily the result of alcohol or drug use within the past 60 days, Dr. Petaja reported that Plaintiff's current impairments would persist for at least 60 days after Plaintiff stopped using drugs or alcohol, indicating Dr. Petaja's assessment of limitations would remain the same with or without the effects of Plaintiff's drug and alcohol abuse.[56] Thus, the ALJ's reason for rejecting Dr Petaja 's opinion is not supported by the record and does not constitute a specific and legitimate reason for rejecting the report.

3.    Dr. Eather and Dr. Gollogly

In May 2015, Dr. Eather, upon initial review of Plaintiff's disability claim, opined Plaintiff had a severe personality disorder impairment that moderately limited his ability to interact appropriately with the general public and ability to respond appropriately to changes in the work setting.[57] Dr. Eather opined Plaintiff would work best when not interacting significantly with the public, is capable of

---

[55] AR 22.

[56] AR 409 (When asked, "Would the mental impairments persist at least 60 days if the client stops sing drugs or alcohol?" Dr. Petaja checked "Yes").

[57] AR 89.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

superficial interaction with supervisors and coworkers, would be able to adapt to occasional changes in a work setting, avoid normal hazards, and travel.[58] In July 2015, Dr. Gollogly, on reconsideration of Plaintiff's disability claim, opined that Plaintiff had personality disorder and affective disorder impairments that moderately limited his ability to interact appropriately with the general public and ability to respond appropriately to changes in the work setting.

The ALJ discounted Dr. Eather's and Dr Gollogly's opinions for the following reasons:

> Unlike Dr. Toews they did not review the entire medical record. While Drs. Eather and Gollogly did note [Plaintiff's] history of polysubstance abuse, they indicated this was in early full remission, as the claimant had completed inpatient chemical dependency treatment in January 2015 and was reportedly attending AA meetings twice daily. Ex. 1A/6; 3A/4. Accordingly, their opinions are predicated on [Plaintiff's] status of being in early remission from substance abuse around the time of their assessments. As discussed below, the subsequent medical evidence indicates [Plaintiff] relapsed and again began using drugs (in particular, meth).[59]

The extent to which a medical source is "familiar with the other information in [the claimant's] case record" is relevant in assessing the weight of that source's medical opinion.[60] While the ALJ is correct that Dr. Toews reviewed the entire medical record in this case, unlike Drs. Eather and Gollogly, Defendant points to

---

[58] AR 89-90.

[59] AR 21.

[60] *See* 20 C.F.R. § 416.927(c)(6).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

nothing in the record that shows Dr. Eather and Dr. Gollogly reviewed different evidence than Dr. Toews that relates to the period of time Plaintiff remained sober.[61] In fact, Dr. Eather completed his assessment in May 2015, only one month before Plaintiff relapsed, and Dr. Gollogly completed his assessment in July 2015, one month after Plaintiff relapsed. In conducting a DAA analysis, the "key factor" for the ALJ to consider is whether the claimant would still be disabled if the claimant stopped using drugs or alcohol.[62] Therefore, the fact that Dr. Eather's and Dr. Gollogly's opinions were predicated on the longest period of time Plaintiff remained sober and included the same evidence as reviewed by Dr. Toews, the ALJ erred by discounting the opinions because they were based on Plaintiff being in early remission from substance abuse at the time of their assessments.

In summary, Plaintiff establishes the ALJ erred in discounting the medical opinions.

**B.    Plaintiff's Symptom Reports: Plaintiff establish error.**

Plaintiff argues the ALJ failed to provide valid reasons for rejecting his symptom reports. When examining a claimant's symptom reports, the ALJ must make a two-step inquiry. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected

---

[61] It appears, and the parties agree, Plaintiff abstained from methamphetamine use from approximately November 2014 to June 2015. *See* AR 19, 53-54, & 515.

[62] 20 C.F.R. § 416.935(b)(2).

to produce the pain or other symptoms alleged."[63] Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."[64] Here, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms inconsistent with the objective medical evidence and other evidence.[65]

First, as to the ALJ's finding that Plaintiff's symptom reports were inconsistent with the objective medical evidence, symptom reports cannot be solely discounted on the grounds that they were not fully corroborated by the objective medical evidence.[66] However, medical evidence is a relevant factor in considering the severity of the reported symptoms.[67] Here, the ALJ highlighted various records to show Plaintiff was able to work while under the influence of methamphetamine and that his ability to work improved when he abstains from methamphetamine.[68]

---

[63] *Molina*, 674 F.3d at 1112.

[64] *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036).

[65] AR 24.

[66] *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

[67] *Id.*

[68] *See* ECF No. 24-25 (citing AR 466-551, 411, 770, & 776).

However, the reports the ALJ cites are Plaintiff's reported symptoms.[69] The objective medical report the ALJ cites to discount Plaintiff's reported symptoms is Dr. Page's psychological report, which as previously explained, the ALJ gave little weight to regarding Plaintiff's functioning without substance abuse. On remand, the ALJ may not discount Plaintiff's symptoms based on discounted medical opinions.

Second, the ALJ also found Plaintiff's reported symptoms inconsistent with his statements to his treatment providers.[70] In evaluating a claimant's symptom claims, an ALJ may consider the consistency of an individual's own statements made in connection with the disability-review process with any other existing statements or conduct.[71] Here, the ALJ highlighted treatment reports where

---

[69] Objective medical evidence" means "signs, laboratory findings, or both." 20 C.F.R. § 404.1502(f). "Signs means one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from your statements (symptoms)." 20 C.F.R. § 404.1502(g).

[70] AR 24-25.

[71] *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (The ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid."); *Thomas*, 278 F.3d at 958-59.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

Plaintiff reported improvements in mood and to be working.[72] However, the same notes cited by the ALJ include Plaintiff reporting "frustrations with work situations," "being angry with society," "quite blue and easily angered" when he stops using drugs, and getting lazy and having difficulty with motivation.[73] Reporting improvement in mood is not necessarily inconsistent with trying to work while being too upset to complete assigned tasks in a timely manner. This is not a clear and convincing reason to reject Plaintiff's subjective symptom testimony.

The ALJ also discounted Plaintiff's symptom reports because they were inconsistent with his activities of daily living.[74] If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms.[75] The ALJ highlighted that Plaintiff was able to handle issues such as finding housing, making appointments, going to Alcoholic Anonymous and Narcotic Anonymous meetings, getting his truck fixed, and opening a bank account for his mother.[76] In order for Plaintiff's cited activities to be deemed "high-functioning activities of daily living" constituting a

---

[72] AR 24-25 (citing AR 482, 483, 762, & 781).

[73] AR 482 & 762.

[74] AR 25.

[75] *Molina*, 674 F.3d at 1113.

[76] AR 25 & 530.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 19

clear and convincing reason to discount Plaintiff's symptoms, the ALJ needed to have more meaningfully articulated this finding. These cited activities, which can be achieved with limited interactions and not on an everyday basis, do not "contradict claims of a totally debilitating impairment."[77]

In summary, Plaintiff established the ALJ erred by discounting Plaintiff's symptom reports.

**C.    Other Steps: The ALJ must reevaluate.**

Plaintiff argues that the ALJ also erred at step two, step three, and in failing to conduct an analysis at step four and step five. Because the ALJ's step two analysis was based on an erroneous weighing of Plaintiff's symptom reports, the ALJ on remand is to proceed with a new sequential analysis.

**D.    Remand for Further Proceedings**

Plaintiff submits a remand for payment of benefits is warranted or in the alternative, a remand for further proceedings is necessary. However, even if Plaintiff's mental-health impairments are considered severe and the RFC is revised to include all or many of the opined limitations, it is not clear that there is no work existing in significant numbers that Plaintiff can perform. Therefore, remand for further proceedings, rather than for an award of benefits, is necessary.[78]

---

[77] *Molina*, 674 F.3d at 1112-13.

[78] *See Garrison*, 759 F.3d at 1021; *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017).

On remand, the ALJ is to, reweigh the medical-opinion evidence, reevaluate Plaintiff's symptom reports, and, if necessary, complete the sequential analysis, including eliciting new testimony from a vocational expert.

## V.    Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **GRANTED**.

2.    The Commissioner's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

3.    The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

4.    The case shall be **CLOSED**.

**IT IS SO ORDERED.**  The Clerk's Office is directed to file this Order, provide copies to all counsel, and close the file.

**DATED** this 13th  day of May 2020.

_____s/Edward F. Shea_____
EDWARD F. SHEA
Senior United States District Judge